# STATE OF CONNECTICUT *v.* JONATHAN BROWN
## (AC 33696)

Gruendel, Robinson and Borden, Js.

Argued March 5—officially released August 27, 2013

*David V. DeRosa*, assigned counsel, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Jonathan Brown, appeals from the judgment of conviction, rendered by the trial

court, of assault in the third degree of an elderly person in violation of General Statutes § 53a-61a and the judgment finding him in violation of his probation in violation of General Statutes § 53a-32. On appeal, the defendant claims that the court (1) improperly failed to sentence him in accordance with the conditions of a *Garvin* agreement;[1] and (2) violated his right to due process by failing to provide an evidentiary hearing on whether he breached such agreement. We affirm the judgments of the trial court.

Following a domestic dispute, the defendant was charged with assault in the third degree in violation of General Statutes § 53a-61, assault in the third degree of an elderly person in violation of § 53a-61a, interfering with an officer/resisting arrest in violation of General Statutes § 53a-167a, threatening in the second degree in violation of General Statutes § 53a-62, breach of the peace in the second degree in violation of General Statutes § 53a-181, disorderly conduct in violation of General Statutes § 53a-182, and two counts of violation of probation in violation of § 53a-32. The defendant and the court then entered into a *Garvin* agreement pursuant to which he pleaded guilty to assault in the third degree of an elderly person and admitted to two counts of violation of probation.[2] Ultimately, the court found that

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Clark*, 136 Conn. App. 421, 423 n.3, 47 A.3d 391, cert. denied, 307 Conn. 906, 53 A.2d 221 (2012); see *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997).

[2] During the October 9, 2009 plea proceeding before the court, *A. Hadden, J.*, the defendant admitted to a second charge of violation of probation, which arose out of a 2008 conviction of having operated a motor vehicle while under the influence of intoxicating liquor or drugs. That second charge of violation of probation is not at issue in this appeal. At the sentencing proceeding on the charges at issue in this appeal, the court, *Wahla, J.*, terminated the violation of probation stemming from that 2008 conviction.

the defendant had violated the *Garvin* agreement and sentenced him to eighteen months incarceration on the charge of assault in the third degree of an elderly person and on one count of violation of probation. This appeal followed.

The defendant's compliance with the conditions of the *Garvin* agreement would have resulted in a fully suspended sentence and a different conviction, namely, assault in the third degree in violation of § 53a-61, instead of assault in the third degree of an elderly person in violation of § 53a-61a. Thereafter, the court determined that the defendant violated the *Garvin* agreement by failing to abide by the rules and regulations of Evolve—a fifty-two session behavior modification program for male offenders of domestic violence. Accordingly, the defendant was sentenced to eighteen months imprisonment.[3]

The record reveals the following undisputed facts and procedural history. At the plea hearing on October 9, 2009, the state set forth the conditions of the *Garvin* agreement, including the requirement that the defendant "complete the Evolve program."[4] The court, *A.*

[3] We note that the defendant has already served the eighteen month sentence underlying this appeal. Although this ordinarily would render the defendant's claims moot; see *Brown* v. *Brown*, 69 Conn. App. 209, 211–12, 794 A.2d 550 (2002); under the terms of the *Garvin* agreement, the defendant's record would disclose a conviction of assault in the third degree in violation of § 53a-61, rather than assault in the third degree of an elderly person in violation of § 53a-61a. Although both are class A misdemeanors, the conviction of assault in the third degree of an elderly person carries a nonsuspendable one year term of imprisonment. Thus, we determine that such a conviction carries a greater stigma than a conviction of simple assault in the third degree. Consequently, this renders this case eligible for review under the collateral consequences exception to the mootness doctrine. See *State* v. *McElveen*, 261 Conn. 198, 205, 802 A.2d 74 (2002).

[4] The state's full summary of the plea agreement was as follows: "[The] defendant will undergo a substance abuse evaluation and treatment, psychological evaluation and treatment and subsequently *complete the Evolve program*. [The] defendant will be required to appear for all subsequent court dates, abide by the protective order, not engage in any new criminal conduct, domestic or nondomestic." (Emphasis added.)

*Hadden, J.,* in approving the proposed *Garvin* agreement, clarified its terms, expressly stating, "*should you fail to complete the Evolve program, should you violate any of the rules and regulations of that program* . . . the court [could] impose the sentence of twenty-seven months to serve with a one year mandatory minimum sentence." (Emphasis added.) In the subsequent months, the defendant accrued multiple unexcused absences from the Evolve program despite the court's frequent reminders to comply with its rules and regulations.

For instance, on February 19, 2010, when defense counsel reported that the defendant had accrued one unexcused absence, Judge Hadden warned him, "[m]ake sure you comply with the requirements of the program, sir." Thereafter, the defendant accrued three additional unexcused absences and was suspended from the Evolve program. On April 30, 2010, the state filed a motion seeking to have the defendant sentenced on the basis of this suspension.[5] Judge Hadden remarked that he was willing to sentence the defendant to the one year mandatory minimum, but continued the matter upon the defendant's request.

Thereafter, at a hearing before the court, *Connors, J.,* on July 16, 2010, the state accorded the defendant another opportunity to satisfy the conditions of the *Garvin* agreement through readmission into the Evolve program. Addressing the defendant, Judge Connors stated, "[y]ou have to abide by all of the program terms

---

[5] Additionally, the state moved for sentencing on the ground that the defendant had engaged in criminal conduct in violation of the *Garvin* agreement by having new charges brought against him—the one count of domestic breach of the peace and one count of nondomestic breach of the peace. The state, however, did not ultimately rely on these violations as grounds for the defendant's breach of the *Garvin* agreement. Accordingly, the sole issue on appeal is whether the defendant violated the condition of the *Garvin* agreement pertaining to the Evolve program.

and conditions, including . . . attendance . . . . In the event that you are noncompliant you will be going to prison for twenty-seven months . . . ." The defendant indicated that he understood. At a subsequent hearing, the state reported that the defendant had accumulated two additional absences from the Evolve program. Judge Connors reminded him, "[m]ake sure you keep up with the classes . . . ."

On January 28, 2011, at a hearing before the court, *Wahla, J.*, the state reported that the defendant once again had been suspended from the Evolve program, this time due to a fourth unexcused absence. Defense counsel noted that, in regard to the defendant's third and fourth unexcused absences, the defendant was present at the meetings but issues arose concerning his conduct.

On February 4, 2011, the state moved for sentencing because of the defendant's second suspension from the Evolve program for failure to comply with its rules and regulations. At a presentencing bond hearing, Judge Wahla read a letter, dated February 4, 2011, detailing the factors leading to the defendant's second suspension: "[The defendant] acknowledged to the male facilitator that he was drinking before . . . group. [The defendant] refused to leave the Evolve office at one point and made a nonverbal hand gesture toward the male facilitator as though he was pointing a gun at him. Over the course of [the defendant's] time in the program he has been given several opportunities and chances to comply with the program rules." The defendant attempted to explain the circumstances leading to this final absence, but did not request an evidentiary hearing on the matter.

Prior to sentencing, the defendant was readmitted into the Evolve program. At another presentencing hearing on March 25, 2011, Judge Wahla noted that the

Evolve program had sent him a letter stating that the defendant had completed the program. The defendant did not request an evidentiary hearing regarding whether his completion of the Evolve program altered the state's repeated contention that he had violated the *Garvin* agreement.

At sentencing on May 13, 2011, the state argued that the defendant's frequent absences, resulting in two separate suspensions from the Evolve program, violated the *Garvin* agreement. Rather than requesting the twenty-seven month maximum, however, the state limited its sentencing request to twenty months, in recognition of the defendant's eventual completion of the Evolve program. Defense counsel also recognized that the defendant's history of absences from the Evolve program did not comport with the *Garvin* agreement, noting, "[t]his is somebody who unfortunately did pick up too many absences in the waning days of his program." Nevertheless, defense counsel asked the court to consider the defendant's ultimate completion of the Evolve program in rendering its sentencing decision; he did not, however, argue that the defendant had complied with the *Garvin* agreement. The court imposed a total sentence of eighteen months imprisonment, including the one year mandatory minimum sentence on the charge of assault in the third degree of an elderly person in violation of § 53a-61a, and six months on the charge of violation of probation in violation of § 53a-32.

## I

The defendant first claims that the court improperly found that he violated the conditions of the *Garvin* agreement.[6] Specifically, the defendant contends that

[6] Both parties agree that although the defendant failed to preserve this claim, it is nonetheless reviewable. We have previously characterized a similar claim as a "sufficiency of the evidence claim." *State* v. *Small*, 78 Conn. App. 14, 23, 826 A.2d 211 (2003). "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof."

he was not required to abide by the rules and regulations of the Evolve program, but instead, that he satisfied the agreement by ultimately completing the program. We disagree.

Our analysis of this claim is twofold. We first determine under plenary review whether the terms of the agreement required the defendant to comply with the Evolve program's rules and regulations. See *State* v. *Stevens*, 278 Conn. 1, 7–8, 895 A.2d 771 (2006). Second, we determine whether the trial court's finding that the defendant violated the *Garvin* agreement when he was twice suspended from the Evolve program was clearly erroneous. Id., 10.

We begin our inquiry by examining the terms of the *Garvin* agreement. "The validity of plea bargains depends on contract principles. . . . When the contract language relied on by the court is definitive, the interpretation of the contract is a matter of law and our review is plenary." (Citations omitted; internal quotation marks omitted.) Id., 7–8. In setting forth the terms of a *Garvin* agreement, "the trial court judge bears an affirmative, nondelegable duty to clarify the terms . . . ." (Internal quotation marks omitted.) *State* v. *Rosado*, 92 Conn. App. 823, 827, 887 A.2d 917 (2006). Thus, we look to whether the terms of the *Garvin* agreement were "clear and unambiguous so as to put the defendant on notice that failing to" abide by the Evolve program's rules and regulations would violate the agreement. Id.

On October 9, 2009, Judge Hadden set forth the terms of the plea agreement as follows:

"The Court: You . . . understand, however, should you violate any of the terms of this plea, *should you*

(Internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 32 n.17, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006).

*fail to complete the Evolve program, should you violate any of the rules and regulations of that program . . .* the state will recommend either an increase in bond and immediate incarceration in lieu of bond or that the court impose the sentence of twenty-seven months to serve with a one year mandatory minimum sentence. You understand all these things?

"The Defendant: Yes.

"The Court: And you agree to all those things?

"The Defendant: Yes." (Emphasis added.)

On the basis of the plea canvass, we conclude that the *Garvin* agreement required the defendant to comply with the Evolve program.[7] Judge Hadden clearly communicated that failure to abide by the Evolve program's rules and regulations would violate the *Garvin* agreement, and the defendant indicated that he understood this condition. See *State* v. *Trotman*, 68 Conn. App. 437, 445, 791 A.2d 700 (2002) (plea agreement required defendant to produce negative urine samples where defendant understood court's warning that positive urine samples would breach agreement).

Thus, we next consider whether the court's finding that the defendant breached the *Garvin* agreement when he was twice suspended from the Evolve program was clearly erroneous. Due process dictates "that a defendant must not be sentenced on the basis of

---

[7] Furthermore, following the initial plea canvass, various judges repeatedly reminded the defendant that failure to comply with the Evolve program's rules and regulations would violate the *Garvin* agreement. When the defendant accrued one unexcused absence from the Evolve program, Judge Hadden warned him, "make sure you comply with the requirements of the program, sir."

At a later hearing, Judge Connors stated: "You have to abide by all of the program terms and conditions, including the payment, attendance, everything. In the event that you are noncompliant you will be going to prison for twenty-seven months." When asked if he understood, the defendant replied, "Yes . . . ."

improper factors or erroneous information . . . ." (Internal quotation marks omitted.) *State* v. *Stevens*, supra, 278 Conn. 10. "The standard of review regarding this inquiry is whether, on the basis of the evidence, the trial court's finding of a breach of the agreement was clearly erroneous." Id. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 782, 991 A.2d 1086 (2010).

We conclude that the trial court's finding that the defendant breached the *Garvin* agreement was not clearly erroneous. The record is replete with evidence demonstrating the defendant's disregard for the Evolve program's rules and regulations. Not only was the defendant suspended from the Evolve program on two separate occasions, each time due to four unexcused absences, but he also engaged in disruptive behavior while in attendance. Additionally, the court relied upon a letter from the Evolve program, dated February 4, 2011, documenting the defendant's noncompliance: "[The defendant] acknowledged to the male facilitator that he was drinking . . . before group. [The defendant] refused to leave the Evolve office at one point and made a nonverbal hand gesture toward the male facilitator as though he was pointing a gun at him. Over the course of [the defendant's] time in the program he has been given several opportunities and chances to comply with the program rules."

The defendant's repeated absences and the Evolve letter demonstrate his failure to comply with the Evolve program's rules and regulations. Although the defendant ultimately completed the Evolve program, the *Garvin* agreement required *both* completion of the program

and compliance with the program's rules and regulations. Therefore, completion alone could not satisfy the agreement. In the face of this evidence, we conclude that the court's finding that the defendant breached the *Garvin* agreement was not clearly erroneous.

## II

Next, we address the defendant's claim that the court, *Wahla, J.*, violated his right to due process when it failed to hold an evidentiary hearing on whether he breached the conditions of the *Garvin* agreement.[8] Specifically, the defendant argues that, under *State* v. *Stevens*, supra, 278 Conn. 1, the court was obligated to conduct an evidentiary hearing when he disputed the contents of the Evolve letter. Further, the defendant contends that the court improperly used the minimum indicia of reliability standard to determine whether the plea agreement was violated, instead of the preponderance of the evidence standard. We are not persuaded.

Although the defendant failed to preserve this claim by requesting an evidentiary hearing, he seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9] "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error

[8] The defendant also raises an equitable estoppel claim in his reply brief, which we decline to address on the basis of the "well established principle . . . that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Thompson*, 98 Conn. App. 245, 247–48, 907 A.2d 1257 (2006).

[9] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 303, 699 A.2d 921 (1997).

requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review and this claim implicates a fundamental constitutional right. See *State* v. *Stevens*, supra, 278 Conn. 6 n.6 (noting that appellate court found *Golding* review appropriate where defendant disputed condition of *Garvin* agreement). The defendant's claim, however, fails to satisfy *Golding*'s third prong because he has not established that a constitutional violation occurred.

First, the defendant asserts that the court was obligated to offer, sua sponte, an evidentiary hearing regarding the contents of the Evolve letter. "[D]ue process requires that the defendant be given the opportunity to contest the evidence upon which the trial court relies for sentencing purposes . . . ." (Citations omitted.) Id., 12. Yet, "in the absence of a dispute as to" whether a condition of the *Garvin* agreement has been violated, "giving effect to the breach of the . . . condition does not violate due process." Id.

Despite ample opportunities, the defendant did not dispute the state's evidence that he violated the *Garvin* agreement. He neither contested the facts underlying his first suspension from the Evolve program,[10] nor requested an evidentiary hearing regarding either his second suspension or the contents of the Evolve letter. Instead, when the court ordered a presentencing hearing in light of the defendant's failure to comply with

---

[10] To be sure, the record indicates the defendant's awareness of his right to request an evidentiary hearing; at the same hearing, held on April 30, 2010, defense counsel requested a *Stevens* hearing pertaining to a postplea arrest. Presumably, if the defendant disputed his noncompliance with the Evolve program, he would have requested an evidentiary hearing on this matter.

the Evolve program, defense counsel's only reply was, "Yes, Your Honor." In fact, rather than disputing the allegations contained in the Evolve letter, defense counsel actually used them to support his argument against increased bond.[11] Further, defense counsel asserted that prior to the hearing held on January 28, 2011, the defendant was aware that the state could seek his incarceration on the basis of his termination from Evolve, thus belying the defendant's belief that he was in compliance with the *Garvin* agreement.

The defendant's only point of contention pertained to the circumstances leading to his second suspension cited in the Evolve letter. The defendant asserted that his noncompliant behavior was not caused by inebriation, but instead, by consumption of "a few too many" narcotics for an existing injury. This assertion, however, is not probative of whether the defendant complied with the program's rules and regulations. Instead of contesting the *fact* of his noncompliance, the defendant only contested the *cause* of his noncompliance. That the defendant engaged in disruptive behavior in violation of the Evolve program's rules remained unchallenged.

Moreover, even if the defendant's contention regarding the circumstances surrounding his noncompliance with the Evolve program were sufficient to trigger an evidentiary hearing, the court accorded the defendant an appropriate hearing by inquiring into his explanation.[12] The "nature and extent" of an evidentiary hearing

[11] The state argued that the defendant posed a flight risk and therefore requested a bond increase. In response, defense counsel stated: "I would note, Your Honor, that [the defendant] has not come before the court with any allegation of a violation of his protective order, knowing his situation. This appears to have been a situation explained in the Evolve reports as one fueled by intoxication. In light of that, I would recommend perhaps alternative measures such as [the Alternative Incarceration Center program] for random urines and Breathalyzers or substance abuse evaluation instead of . . . increasing the bond."

[12] The following colloquy took place between the court and the defendant:

"The Defendant: Well, I'd like to say that I will do whatever the court asks me to do. I would like to finish my five classes with Evolve. And my

is within the discretion of the trial court, provided that it is of "sufficient depth . . . so that the court can be satisfied . . . of the existence of a legitimate basis" for finding that the condition of the *Garvin* agreement was violated. (Internal quotation marks omitted.) *State* v. *Stevens*, supra, 278 Conn. 13. We conclude that the court's inquiry into the defendant's contentions satisfied this standard.

Next, we address the defendant's argument that the court improperly applied the minimum indicia of reliability standard in assessing the defendant's compliance with the *Garvin* agreement.[13] Specifically, the defendant argues that the court should have applied the preponderance of the evidence standard utilized in

absence there was due to I got an injury and I had several very hard narcotics for my injury. And I took a few too many of those and the man thought I was, you know. . . . That's why I was—I did make the class, the last class, but I was asked to leave and I did leave, and there was, you know, incident.

"The Court: You were asked to leave, why?

"The Defendant: He thought—I guess he thought I was intoxicated. It was the medications that I took, and I have a whole list of them. . . . And, you know, he thought I was under the influence of something other than what I was, which was the pain pills.

"The Court: So . . . you're telling me that the Evolve program, who had this observation about you, there was no evidence, real evidence that you were intoxicated?

"The Defendant: No. He—it would appear that—

"The Court: He thought that you were intoxicated?

"The Defendant: He thought—yes. Yes.

"The Court: But you are telling me that you were not?

"The Defendant: No, I was not. I have—I have evidence of five different medications I take for pain.

"The Court: So, you took medication?

"The Defendant: Yes. Five different—I don't have them with me.

"The Court: On that day, sir, I'm talking about?

"The Defendant: Yes. Yes. I took a couple for my shoulder."

[13] Contrary to the defendant's assertion, the record does not reveal which standard of proof the court applied in determining whether the defendant breached the *Garvin* agreement on February 4, 2011. It is well established that where the record is silent, a reviewing court will not presume error. See *State* v. *Adgers*, 101 Conn. App. 123, 132–33, 921 A.2d 122, cert. denied, 283 Conn. 903, 927 A.2d 915 (2007). Thus, because the record is silent as to the standard of proof applied, we presume that the court utilized the

probation revocation proceedings in determining whether he breached the agreement. See *State* v. *Ricketts*, 140 Conn. App. 257, 260, 57 A.3d 893, cert. denied, 308 Conn. 909, 61 A.3d 531 (2013). We disagree.

"When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *State* v. *Petaway*, 107 Conn. App. 730, 744, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008). Under a *Garvin* agreement, "a court may impose sentences predicated on the defendant's failure to fulfill a condition of the agreement . . . ." *State* v. *Stevens*, supra, 278 Conn. 5. The burden of proof for determining whether a *Garvin* agreement has been violated is minimum indicia of reliability. Id., 10. Thus, "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Internal quotation marks omitted.) *State* v. *Petaway*, supra, 746 n.6.

Here, the defendant concedes that the trial court applied the appropriate standard of proof of minimum indicia of reliability in determining whether he violated the *Garvin* agreement. The defendant nevertheless argues that the court should have followed Justice Norcott's concurrence in *Stevens* by applying the preponderance of the evidence standard. *State* v. *Stevens*, supra, 278 Conn. 17–18. This argument is misplaced. "As we have stated before, [w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." (Internal quotation marks omitted). *State* v. *Johnson*, 71 Conn. App. 272, 278, 801 A.2d

---

appropriate standard, which, pursuant to *State* v. *Stevens*, supra, 278 Conn. 4, is the minimum indicia of reliability standard—the very standard that, the defendant concedes, was applied by the court.

890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002), cert. denied, 537 U.S. 1207, 123 S. Ct. 1286, 154 L. Ed. 2d 1052 (2003).

The judgments are affirmed.

In this opinion the other judges concurred.