******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT LEE
HUDSON III
(AC 39825)

Lavine, Prescott and Harper, Js.

*Syllabus*

Convicted, following a plea of guilty, of the crimes of criminal possession
of a firearm and altering a firearm identification mark, the defendant
appealed to this court. The defendant had entered into a plea agreement
with the state pursuant to *State* v. *Garvin* (242 Conn. 296), under which
he would receive a certain sentence so long as he appeared before the
court for a scheduled sentencing hearing and was not arrested before
that time while out on bond, and would be subject to enhanced penalties
if he violated that agreement. The sentencing hearing had been continued
several times, and between the time the defendant entered into the
*Garvin* agreement and the sentencing hearing, he was arrested on new
criminal charges. The trial court denied the defendant's motion to con-
tinue the sentencing until the second case was resolved and sentenced
him to a total effective sentence of ten years of incarceration instead of
the previously agreed six years of incarceration. *Held* that the defendant
could not prevail on his claim that the trial court deprived him of his
right to due process by finding that he violated the no new arrests
condition of the *Garvin* agreement and increasing his sentence without
first holding a hearing, in accordance with *State* v. *Stevens* (278 Conn.
1), to determine whether his arrest in the second case was supported
by probable cause; although the defendant did request the trial court
to postpone his sentencing in the present case until the ultimate question
of his guilt in the second case was decided, he failed to put the court
on notice that he was challenging the validity of the arrest in the second
case and, therefore, his claim was unpreserved, and even though the
record was adequate to review the claim pursuant to *State* v. *Golding*
(213 Conn. 233) and the claim implicated the defendant's constitutional
right to due process, the defendant failed to demonstrate the existence
of a constitutional violation of his right to due process pursuant to the
third prong of the test set forth in *Golding*, as any evidence pertaining
to the defendant's ultimate criminal liability with respect to the second
case was irrelevant to the trial court's determination that he breached
the *Garvin* agreement, and there was nothing in the record to suggest
that the arrest in the second case lacked the requisite minimal indicium
of reliability necessary to be considered at sentencing given that a
judicial determination of probable cause was made within forty-eight
hours of the warrantless arrest and that the defendant had conceded,
at oral argument and in response to questions from this court, that he
was not challenging whether there was a legitimate basis for that arrest.

Argued February 5—officially released June 26, 2018

*Procedural History*

Substitute information charging the defendant with
the crimes of criminal possession of a firearm and alter-
ing the identification mark of a firearm, brought to
the Superior Court in the judicial district of Stamford-
Norwalk, where the defendant was presented to the
court, *Hon. Richard F. Comerford, Jr.*, judge trial ref-
eree, on a plea of guilty; judgment of guilty in accor-
dance with the plea, from which the defendant appealed
to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appel-
lant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney,

with whom, on the brief, were *Richard J. Colangelo, Jr.,* state's attorney, *Paul Ferencek,* supervisory assistant state's attorney, and *James Bernardi,* former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Robert Lee Hudson III, appeals following the judgment of conviction, challenging only the sentence imposed on him by the trial court following his plea of guilty under the *Alford*[1] doctrine to criminal possession of a firearm in violation of General Statutes (Rev. to 2013) § 53a-217[2] and altering the identification mark of a firearm in violation of General Statutes (Rev. to 2013) § 29-36.[3] The defendant's plea was entered subject to a *Garvin* agreement.[4] The sole issue on appeal is whether the court violated the defendant's right to due process when it found that he had violated the *Garvin* agreement without first conducting a hearing in accordance with *State* v. *Stevens*, 278 Conn. 1, 11–13, 895 A.2d 771 (2006), to determine whether probable cause existed to support the defendant's subsequent arrest, which was the basis of the violation. We conclude that the defendant's right to due process was not infringed and, accordingly, affirm the judgment of the court.

The record reveals the following relevant facts and procedural history. On September 9, 2013, the defendant was arrested pursuant to a warrant for criminal possession of a firearm in violation of § 53a-217, altering the identification mark of a firearm in violation of § 29-36, and having a weapon in a motor vehicle in violation of General Statutes (Rev. to 2013) § 29-38. The charges stemmed from the defendant's alleged involvement with an attempted burglary in Stamford (Stamford arrest).

On September 4, 2014, the defendant pleaded guilty, under the *Alford* doctrine, to criminal possession of a firearm and altering the identification mark of a firearm. The defendant subsequently entered into a *Garvin* agreement whereby the court agreed to release the defendant on bond while he awaited sentencing and to impose the agreed upon sentence, which was six years incarceration, followed by four years of special parole, so long as he (1) appeared in court for sentencing on December 5, 2014, and (2) was not arrested while out on bond (no new arrests condition). The court advised the defendant that, if he violated a condition of the *Garvin* agreement, he was no longer entitled to the agreed upon sentence and the court instead could sentence him up to the statutory maximum period of incarceration for the charges to which he pleaded guilty. The court canvassed the defendant as follows:

"Q. Now you're out on bond on these files, sir. You understand you have to be back here on December 5th. Do you understand that, sir?

"A. Yes, sir.

"Q. If you don't come back on that date, I will feel free to sentence you to the maximum term for the charges to which you've plead[ed] [guilty], which is ten years to serve; two [years] mandatory minimum time.

Do you understand that, sir?

"A. Yes, sir.

"Q. In addition to that, you would be charged with failure to appear in the first degree, which brings with it an additional five years in the state's prison system. Do you understand that, sir?

"A. Yes, sir.

"Q. Secondarily, if you were to pick up any files between now and the time you are sentenced, be they serious motor vehicle offenses or criminal offenses, I would feel free to sentence you to the maximum term, which is ten years to serve. Do you understand that, sir?

"A. Yes, sir.

"Q. Do you agree to all of that, sir?

"A. Yes, sir."[5]

On December 3, 2014, the sentencing hearing was continued to January 20, 2015. On December 19, 2014, the defendant was arrested in connection with a shooting in the Norwalk-Stamford area and charged with attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), reckless endangerment in the first degree in violation of General Statutes § 53a-63, criminal possession of a pistol or revolver in violation of General Statutes (Supp. 2014) § 53a-217c, unlawful discharge of a firearm in violation of General Statutes § 53-203, altering the identification mark of a firearm in violation of General Statutes (Supp. 2014) § 29-36, and stealing a firearm in violation of General Statutes § 53a-212 (Norwalk arrest).

On October 14, 2015, following numerous continuances, the court held a sentencing hearing on the charges to which the defendant had pleaded guilty under the *Alford* doctrine as a result of his Stamford arrest. The court noted the *Garvin* agreement that the defendant had entered into with respect to those charges. The defendant's attorney, Richard Meehan, Jr., then asked the court whether it would (1) consider sentencing the defendant to the original agreed upon disposition, which was six years to serve, followed by four years of special parole, or (2) refrain from sentencing him until the Norwalk case was resolved because he claimed that a third-party witness would exonerate him of those charges.[6]

In response to Meehan's request, the court stated that "[w]hen the *Garvin* warnings are given—and the *Garvin* warnings are not predicated upon guilt beyond a reasonable doubt—the *Garvin* warnings are given with the understanding that if [the defendant is] involved in any kind of subsequent behavior that *results in a judge finding probable cause for his arrest*, be it a serious motor vehicle matter or a criminal matter, then he has violated the *Garvin* warnings given by the

[c]ourt. That was the agreement he agreed to at the time the *Garvin* warnings were given, not proof beyond a reasonable doubt." (Emphasis added.)

Despite the court's explanation, the defendant failed to argue that his Norwalk arrest was not supported by probable cause or otherwise contest its validity. Nor did the defendant explicitly request a hearing of any kind.

The court then heard from the state, which requested that the court increase the defendant's total sentence to ten years of incarceration. The defendant subsequently made a formal motion to continue the sentencing until the Norwalk case was resolved. The court denied the defendant's motion for continuance and sentenced him to two consecutive five year terms of incarceration for criminal possession of a firearm in violation of § 53a-217 and altering the identification mark of a firearm in violation of § 29-36, for a total effective sentence of ten years of incarceration, two years of which were a mandatory minimum period of incarceration.

On November 21, 2016, the defendant filed the present appeal. On June 26, 2017, during the pendency of this appeal, the Norwalk case was resolved when the defendant pleaded guilty[7] under the *Alford* doctrine to criminal possession of a firearm in violation of § 53a-217 and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[8]

On appeal, the defendant claims that the court deprived him of his right to due process by finding that he violated the no new arrests condition of the *Garvin* agreement and increasing his sentence without first holding a *Stevens* hearing to determine whether his Norwalk arrest was supported by probable cause. We disagree.

The state contends that this claim is not preserved. The defendant, however, argues that his assertion that he would be exonerated of the charges stemming from his Norwalk arrest was enough to put the court on notice that he was requesting a *Stevens* hearing. We agree with the state that the claim the defendant advances on appeal was not distinctly raised to the trial court and is therefore unpreserved.

The defendant's request that his sentencing in the Stamford case be postponed until the ultimate question of his guilt in the Norwalk case was decided is fundamentally different than a request for adjudication by the court regarding the validity of his Norwalk arrest. At no point during the defendant's October 14, 2015 sentencing hearing did the defendant contest whether his Norwalk arrest was supported by probable cause or otherwise challenge the validity of the arrest, despite the court's statement that "the *Garvin* warnings are not predicated upon guilt beyond a reasonable doubt— the *Garvin* warnings are given with the understanding that if [the defendant is] involved in any kind of subse-

quent behavior that results *in a judge finding probable cause for his arrest* . . . then he has violated the *Garvin* warnings . . . ." (Emphasis added.) We do not mean to suggest that the defendant was required to use the precise phrase, "I am requesting a *Stevens* hearing," in order to preserve his claim. At the very least, however, he needed to put the court on notice that he was challenging the validity of the arrest itself. Because he failed to do so, we conclude that his claim is not preserved.

The defendant requests that, in the event we conclude that his claim is not preserved, we review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40.

As a threshold matter, we note that the defendant's claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. Specifically, the issue of whether the court was required to hold a *Stevens* hearing before finding that the defendant violated the no new arrests condition of the *Garvin* agreement implicates his constitutional right to due process. See *State* v. *Stevens*, supra, 278 Conn. 7 n.8, 11–13. The defendant cannot satisfy the third prong of *Golding*, however, because no constitutional violation occurred in the present case.

We begin by setting forth the legal principles relevant to the defendant's claim. A *Garvin* agreement is a conditional plea agreement. See *State* v. *Brown*, 145 Conn. App. 174, 176 n.1, 75 A.3d 713, cert. denied, 310 Conn. 936, 79 A.3d 890 (2013). If a defendant enters into a *Garvin* agreement and, thereafter, violates a condition of that agreement, the court may decline to impose the agreed upon sentence and instead increase the defendant's sentence up to his or her maximum statutory exposure. See *State* v. *Garvin*, 242 Conn. 296, 300–302, 314, 699 A.2d 921 (1997). Moreover, a no new arrests condition may properly be imposed by the court pursuant to a *Garvin* agreement. See *State* v. *Stevens*, supra, 278 Conn. 8–9 (condition of *Garvin* agreement that defendant not get arrested while awaiting sentencing was valid).

In *State* v. *Stevens*, our Supreme Court determined

that, regarding a violation of a no new arrests condition of a *Garvin* agreement, due process requires that the defendant be given the opportunity to contest the validity of the arrest. Id., 12. If the defendant does contest the validity of the arrest, the court must conduct an inquiry regarding the defendant's challenge.[9] Id., 13. The defendant in *Stevens*, however, did not dispute the facts leading to the arrest or whether it was supported by probable cause. Id., 12. Our Supreme Court concluded, therefore, that "in the absence of a dispute as to the validity of the arrest, giving effect to the breach of the no [new] arrest condition does not violate due process." Id.

The defendant argues that the court should have conducted a *Stevens* hearing before finding that he violated the no new arrests condition of the *Garvin* agreement. The defendant further appears to argue that the hearing to which he was entitled would include, in addition to any inquiry regarding whether his Norwalk arrest was supported by probable cause, an opportunity to contest his ultimate criminal liability. In *Stevens*, however, our Supreme Court determined that due process did not require the court to find that the defendant actually committed the postplea offense that led to her arrest before concluding that she violated the *Garvin* agreement. See id., 12–13. Thus, even if the court did conduct a *Stevens* hearing in the present case, any evidence relating to the defendant's ultimate criminal liability would not have altered the court's conclusion that he violated the *Garvin* agreement.

Moreover, absent any indication that the defendant's Norwalk arrest was not valid, the court was free to consider the arrest at sentencing without first holding a *Stevens* hearing.[10] "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits . . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . ." (Citations omitted; internal quotation marks omitted.) *State v. Huey*, 199 Conn. 121, 126, 505 A.2d 1242 (1986). "The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." Id., 127.

In the present case, there is nothing in the record to suggest that the defendant's Norwalk arrest lacked the requisite minimal indicium of reliability necessary to be considered at sentencing. Although the defendant was arrested without a warrant, the court, *Dennis, J.*, later determined, within the applicable forty-eight hour period required by Practice Book § 37-12, that the arrest was supported by probable cause. Moreover, at oral argument and in response to questions from this court, the defendant conceded that he was not challenging whether there was a "legitimate basis" for the arrest— in other words, he does not argue that the arrest lacked

probable cause.

Thus, because (1) any evidence pertaining to the defendant's ultimate criminal liability with respect to the Norwalk arrest was irrelevant to the court's determination that he breached the *Garvin* agreement, and (2) there is nothing in the record to suggest that the arrest lacked the requisite minimal indicium of reliability necessary to be considered at sentencing, we conclude that the defendant's right to due process was not violated. See *State* v. *Yates*, 169 Conn. App. 383, 401–403, 150 A.3d 1154 (2016), cert. denied, 324 Conn. 920, 157 A.3d 85 (2017) (sentencing court properly considered defendant's pending arrest warrants in deciding what sentence to impose in light of defendant's failure to comply with "no new arrests" condition of *Garvin* agreement where, inter alia, defendant never challenged whether arrest warrants were supported by probable cause [internal quotation marks omitted]). The defendant's claim, therefore, fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); see also *State* v. *Fairchild*, 155 Conn. App. 196, 199 n.2, 108 A.3d 1162 ("[a] criminal defendant who enters a guilty plea under the *Alford* doctrine does not admit guilt but acknowledges that the state has sufficient evidence to convict"), cert. denied, 316 Conn. 902, 111 A.3d 470 (2015).

[2] Hereinafter, all references to § 53a-217 in this opinion are to the 2013 revision of the statute.

[3] Hereinafter, unless otherwise indicated, all references to § 29-36 in this opinion are to the 2013 revision of the statute.

[4] A *Garvin* agreement is a conditional plea agreement. See *State* v. *Garvin*, 242 Conn. 296, 300–302, 699 A.2d 921 (1997). Typically, a defendant who enters into a *Garvin* agreement agrees to a particular sentence of incarceration, but wishes to be at liberty pending sentencing. Thus, the court will release the defendant on bond prior to sentencing and, in exchange, the defendant agrees to abide by certain conditions. Oftentimes, those conditions include a requirement that the defendant appear at the sentencing hearing and refrain from being arrested. If the defendant violates a condition of the *Garvin* agreement, the court may impose a longer sentence than that to which the defendant originally agreed. See id., 300–302, 309–14; see also *State* v. *Brown*, 145 Conn. App. 174, 176 n.1, 75 A.3d 713, cert. denied, 310 Conn. 936, 79 A.3d 890 (2013).

[5] We note that, at the time the defendant accepted the plea agreement, the court did not explain to him in explicit terms that if he was subsequently arrested, *and that arrest was supported by probable cause*, it would constitute a violation of the *Garvin* agreement. The defendant, however, does not challenge on appeal whether the *Garvin* canvass itself was proper.

[6] Specifically, Meehan stated to the court: "If Your Honor please, I discussed with [the defendant] the fact that the court intends to move forward and sentence him in accordance with . . . *Garvin*, based upon the circumstances of the new arrest. He has asked me to make application to the court as follows. Either, one, that the court consider sentencing him to the original plea bargain here in the case, which was six years to serve, two of which were to be mandatory, on the criminal possession of a firearm, followed by four years of special parole. Or, [in the] alternative, to continue this case until the resolution of the latest case, his Norwalk arrest, which forms the basis for the *Garvin* claim.

"It's [the defendant's] contention—and he's indicated this to his prior counsel, [Attorney John] Imhoff, and also to Attorney O'Reilly who's now been appointed—that there is a witness in that case, a codefendant who has in fact given a statement that exonerates him. So, if in fact that's true, and if in fact he prevails before a jury on the new charge, it really would be somewhat unfair for him, to sentence him under *Garvin* on the technicality of the arrest. So he's asked me to make that application to the court. If

Your Honor chooses not to impose the original plea bargain sentence that had been discussed, then I would ask Your Honor to continue this matter indefinitely until the resolution of the pending Norwalk case.''

[7] The fact that the defendant pleaded guilty to those charges does not render this appeal moot. In *Council* v. *Commissioner of Correction*, 286 Conn. 477, 486–88, 944 A.2d 340 (2008), our Supreme Court considered this exact issue, namely, whether the fact that the petitioner pleaded guilty to a charge stemming from a subsequent arrest rendered moot his claim that the court should have allowed him to contest the validity of that arrest before finding that he violated the *Garvin* agreement. In that case the petitioner argued, and our Supreme Court agreed, that his claim on appeal was not moot because the sentencing court had considered all of the charges brought against him as a result of his subsequent arrest rather than the single charge to which he ultimately pleaded guilty. Id., 488. The rest of the charges were nolled by the state. Thus, our Supreme Court reasoned that it was possible that, ''if [the petitioner] were to prevail in this appeal, he would not be precluded from attempting to establish on remand that there was no basis for those charges. If the trial court were to agree . . . it might impose a different sentence.'' Id.

[8] Although § 29-35 (a) was the subject of a technical amendment in 2016; see Public Acts 2016, No. 16-193, § 9; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[9] Although *Stevens* does not entirely delineate the scope of the requisite inquiry, our reading of that case indicates that, typically, the issue would be limited to whether there was probable cause to arrest the defendant.

[10] The defendant argues that a defendant must affirmatively waive his right to a *Stevens* hearing, citing *State* v. *Stevens*, supra, 278 Conn. 11–13, and *State* v. *Yates*, 169 Conn. App. 383, 388, 401–403, 150 A.3d 1154 (2016), cert. denied, 324 Conn. 920, 157 A.3d 85 (2017). Our appellate courts, however, have never imposed such a rule, nor do we think it is appropriate to require a court to canvass a defendant regarding his or her right to a *Stevens* hearing in every case with an alleged *Garvin* violation. Presumably, a defendant is the person most likely in possession of any information undermining the validity of the arrest that formed the basis of the *Garvin* violation and, thus, would know whether a hearing might be appropriate.