******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# JAMIE LOVE *v.* COMMISSIONER
# OF CORRECTION
## (AC 45738)

Elgo, Suarez and Seeley, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of the crimes of assault in the first degree and carrying a pistol without a permit, sought a writ of habeas corpus, claiming that his trial counsel, T, had rendered ineffective assistance because she failed to consult with and retain an eyewitness identification expert to testify at a pretrial hearing to suppress evidence and at his criminal trial. The habeas court rejected the petitioner's claim of ineffective assistance of counsel, concluding that the petitioner had failed to establish that T's decision not to consult with or use an eyewitness identification expert constituted deficient performance. The court determined that, although T was aware that the petitioner's prior trial counsel, B, had intended to use an eyewitness identification expert at the criminal trial, there was no evidence that established what B's basis was for believing it necessary to retain such an expert. The court further determined that T had a reasonable strategic basis for concluding that there was nothing an identification expert would have contributed to the petitioner's defense. The court rendered judgment denying the petition, and the petitioner, on the granting of certification, appealed to this court. *Held* that the habeas court properly determined that the petitioner failed to show that T's performance was deficient, the petitioner having failed to present sufficient evidence to overcome the presumption that T's decision not to consult with or present the testimony of an identification witness expert was sound trial strategy: the habeas court credited the testimony of T, an experienced public defender who was familiar with eyewitness identification experts, that her review of the state's case, B's file and the identification evidence had led her to conclude that an eyewitness identification expert was unnecessary and that there was nothing such an expert would have contributed to the defense, as T's own investigation led her to conclude that the state's identification witnesses were sure that the petitioner was the gunman in the underlying shooting incident and that enhanced video evidence showed that the petitioner and the shooter had similar characteristics; moreover, T pursued other reasonable avenues of discrediting the state's case, including seeking an alibi for the petitioner, filing a motion to suppress the witnesses' identifications of the petitioner, and cross-examining the witnesses about weaknesses or discrepancies in their identifications; furthermore, this court found unavailing the petitioner's assertion that the fact that B, whom the petitioner had retained privately, had withdrawn specifically so that the defense would be able to afford an eyewitness identification expert should have prompted T to consult such an expert once she was appointed to represent the petitioner, as that was not the standard to determine whether counsel performed deficiently, and, although B may have believed that an eyewitness identification expert was necessary, the fact that one attorney may have opted for an expert did not signify that another attorney's decision not to consult an expert constituted deficient performance.

Argued September 18, 2023—officially released February 6, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the petition was withdrawn in part; thereafter, the case was tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*J. Christopher Llinas*, for the appellant (petitioner).

*Linda F. Rubertone*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SEELEY, J. Following the granting of his petition for certification to appeal, the petitioner, Jamie Love, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, in which he alleged a claim of ineffective assistance of trial counsel. On appeal, the petitioner claims that the habeas court improperly concluded that his trial counsel's failure to consult with and retain an eyewitness identification expert for assistance and testimony at the petitioner's pretrial suppression hearing and at his criminal trial did not constitute deficient performance that prejudiced the petitioner. We disagree with the petitioner and, accordingly, affirm the judgment of the habeas court.

The following facts, as found in the record and set forth by the habeas court in its memorandum of decision, and procedural history are relevant to this appeal. "On September 4, 2015, Waterbury police [were] dispatched to 262 Hill Street regarding a shooting. Police officers . . . respond[ed] to that location and identified one or two witnesses [who] had been involved or had witnessed a shooting. Police officers simultaneously also went to St. Mary's Hospital where they [met with] the [victim] in this case . . . William Compress [victim]. He . . . indicate[d] [that] he was shot in the leg by a Black male, approximately [five feet, ten inches tall], wearing a white T-shirt. [The shooter] was also with another individual later identified as Aaron Velez, who is a codefendant. . . .

"When police officers [met] with . . . [the victim], he . . . indicate[d] that there was a verbal altercation between himself and . . . Velez. . . . Velez . . . instruct[ed] the [shooter], later identified as [the petitioner], to shoot [the victim], which he did, in fact, do at the time." (Internal quotation marks omitted.)

On the basis of information obtained from witnesses at the scene, as well as information from a confidential informant, the officers "were able to develop a name, specifically, Jamie Love. They . . . compare[d] an in-house booking photo[graph] to the surveillance video [that] was recovered at the scene and, based upon that information . . . present[ed] a photo[graphic] lineup to two separate witnesses, one being the victim in this case . . . and also Placido Rivera, who was present during the altercation. Both [the victim] and . . . Rivera identified [the petitioner] as the [man] who [shot] the victim in this case." (Internal quotation marks omitted.)

The petitioner subsequently was charged with assault in the first degree in violation of General Statutes § 53a-59, conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59, unlawful discharge of a firearm in violation of General

Statutes § 53-203, criminal use of a firearm in violation of General Statutes § 53a-216, and carrying a pistol without a permit in violation of General Statutes (Rev. to 2015) § 29-35. The petitioner initially had obtained private counsel, Peter G. Billings, to represent him. On October 21, 2016, Billings submitted a motion to withdraw on the ground that, "[i]n order to provide the effective assistance of counsel, undersigned counsel believes it is absolutely necessary to retain an eyewitness identification expert to act as a consultant and testify at the upcoming trial. . . . [T]he [petitioner] does not have sufficient funds to retain the necessary expert. . . . Consequently, undersigned counsel does not believe he can provide the effective assistance of counsel as required by the state and federal constitutions or uphold his ethical obligations to the [petitioner] under these circumstances." The trial court, *Fasano, J.*, granted Billings' motion to withdraw on December 21, 2016, and appointed the Office of the Public Defender to represent the petitioner. Subsequently, TaShun Bowden-Lewis, a senior assistant public defender (trial counsel), filed an appearance on behalf of the petitioner.

According to the habeas court, trial counsel "received . . . Billings' case materials and received discovery from the state, which included . . . [surveillance] videos. [Trial counsel] noted that . . . Billings had used an investigator and that the videos had been enhanced to allow for [a] side-by-side comparison of the shooter and the petitioner. [Trial counsel] explained that the . . . description [of the shooter] . . . and the petitioner's appearance were quite similar, including several distinct facial features. [Trial counsel] additionally conducted her own research but did not consult with an eyewitness identification expert. [Trial counsel] explained to the petitioner her reasons for not consulting with such an expert.

"The petitioner discussed with [trial counsel] the efforts by . . . Billings directed toward obtaining an expert [on] eyewitness identification. The petitioner, who is Black, described the eyewitness to the shooting (i.e., Rivera) as being Hispanic and the victim (i.e., Compress) as being white. The petitioner stated that [trial counsel] discredited anything . . . Billings had said about an eyewitness identification expert; instead, [trial counsel] said that the eyewitnesses had identified him."

Before trial began, trial counsel "challenged the photo[graphic] identification procedures with a motion to suppress.[1] [Trial] [c]ounsel considered using an expert on eyewitness identification but concluded that an expert would not assist her arguments. The motion to suppress was argued after the jury had been selected and the matter was ready to proceed to trial. [At the suppression hearing], [a]fter both [Rivera] and the victim testified[2] and identified the petitioner as the shooter, which was consistent with [their identifications of] the

petitioner from their respective photo[graphic] arrays, the court took a recess before issuing its ruling." (Footnotes added.) During the recess, the petitioner asked his trial counsel if a plea offer that previously had been made by the state was still available. Trial counsel then approached the prosecutor, who was amenable to the plea offer.

After the recess, the court, *Crawford, J.*, ruled on the petitioner's motion to suppress the identifications and denied the motion to suppress. Later that same day, trial counsel informed the court, *Fasano, J.*, that the petitioner wanted to accept the state's plea offer. The petitioner then pleaded guilty, pursuant to the *Alford* doctrine,[3] to assault in the first degree and carrying a pistol without a permit. The state recommended a sentence of eight years to serve, five years of which was a mandatory minimum, with ten years of special parole, for a total effective sentence of eight years to serve and ten years of special parole. The court canvassed the petitioner and found that his guilty plea was "voluntary and understandingly made with the assistance of competent counsel." The court found that there was a factual basis for the plea and accepted it. The court scheduled the sentencing hearing for January 31, 2018.

The petitioner subsequently regretted his decision to plead guilty. Prior to his sentencing hearing, the petitioner wrote letters to his trial counsel, the prosecutor, and the court asking for help in revoking his plea because he did not believe he had been provided with effective assistance of counsel. In the letters, he complained that his trial counsel had not sufficiently communicated with him and had not provided him with materials obtained during discovery. At sentencing, the petitioner addressed the court and requested that he be permitted to vacate his plea on the basis of ineffective assistance of counsel. The court informed the petitioner that, although ineffective assistance of counsel could be the basis of a habeas petition, it was not a basis for withdrawing his guilty plea. Before the court imposed the agreed upon sentence, the petitioner stated, "I definitely want to take my plea back. I was wrongly accused. She did nothing to represent me." The court then, having previously accepted the petitioner's plea, imposed the agreed upon sentence.

Subsequently, the petitioner filed the operative amended habeas petition on June 16, 2021. The petitioner alleged, inter alia, that his trial counsel rendered ineffective assistance because she failed to procure an eyewitness identification expert to aid in the petitioner's defense. Specifically, he alleged that trial counsel's representation was ineffective "in that she failed to consult with and engage an expert in the field of eyewitness identification regarding the strengths and weaknesses of the state's alleged eyewitnesses, and to offer

expert testimony regarding the same at the hearing on the motion to suppress . . . as well as at trial . . . ." The petitioner also claimed that, but for trial counsel's deficient performance, he "would not have pleaded guilty and would have insisted on continuing with the trial for which the jury already had been selected . . . ."

On March 16, 2022, the habeas court, *M. Murphy, J.*, held a one day trial on the amended habeas petition, at which the petitioner testified and presented testimony from his trial counsel; Dr. John Bulevich, an expert in human memory and psychology; and Attorney Christopher Duby, an expert in criminal law.

The habeas court summarized the testimony presented by the petitioner and trial counsel as follows. The petitioner testified that "he felt pressured by [trial counsel] to accept the plea and not proceed to trial. The petitioner testified that, after the discussion with [trial counsel] during the recess following the motion to suppress hearing, he contacted . . . Billings and consulted with his former attorney. The petitioner testified at the habeas trial that he felt that he had no option, after it became clear that there would be no eyewitness identification expert at trial, but to plead guilty."

Trial counsel testified that "she has encountered identification issues in other cases during her twenty-four years as a public defender. She has conducted research in this area on an ongoing basis. Based on her review of the state's case and the identification issues, [trial counsel] concluded that an expert on eyewitness identification was unnecessary, both in general and regarding cross-racial identification purposes in this case, and informed the petitioner accordingly."

In a memorandum of decision dated June 30, 2022, the habeas court rejected the petitioner's ineffective assistance of counsel claim. The habeas court concluded that the petitioner failed to establish that trial counsel's failure to call an eyewitness identification expert constituted deficient performance. The court noted that, although trial counsel "did not consult with or use an eyewitness identification expert . . . counsel did review the materials in Billings' file, which included his investigation and assessment of the eyewitness identifications based on the enhanced videos that allowed for [a] side-by-side comparison of the shooter and the petitioner. It has not been established by any evidence what . . . Billings' basis was for believing it necessary to retain an eyewitness identification expert to act as a consultant and testify at the criminal trial. Thus, although [trial counsel] was aware that Billings intended to use an eyewitness identification expert at trial, she concluded after her review of the state's file, the video recording, [her] predecessor counsel's file, and her own investigation, that there was nothing an eyewitness expert would contribute to the defense.

[Trial counsel's] decision not to have an identification expert was corroborated by the transcripts of the motion to exclude the video and the motion to suppress the photo[graphic] arrays. The court finds [trial counsel's] testimony to be both credible and persuasive, and that her representation was not deficient."[4] Accordingly, the court denied the amended habeas petition. Thereafter, the court granted the petition for certification to appeal, and the petitioner appealed to this court.

Before we address the substance of the petitioner's ineffective assistance of counsel claim, we first set forth our standard of review and general principles governing such a claim. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 703–704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018); see also *Maia* v. *Commissioner of Correction*, 347 Conn. 449, 460, 298 A.3d 588 (2023). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 342 Conn. 771, 780, 272 A.3d 189 (2022). To establish prejudice in cases involving guilty pleas, "the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *O'Reagan* v. *Commissioner of Correction*, 211 Conn. App. 845, 862, 274 A.3d 189, cert. denied, 343 Conn. 926, 275 A.3d 1213 (2022); see also *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

With respect to the first prong of *Strickland*, "[i]n order for a petitioner to prevail on a claim of ineffective assistance on the basis of deficient performance, he must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." (Internal quotation marks omitted.) *Mercer* v. *Commissioner of Correction*, 222 Conn. App. 713, 729,      A.3d      (2023), petition for

cert. filed (Conn. January 24, 2024) (No. 230287). Furthermore, "we are mindful that judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that [the] conduct [of trial counsel] falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Doan* v. *Commissioner of Correction*, 193 Conn. App. 263, 274–75, 219 A.3d 462, cert. denied, 333 Conn. 944, 219 A.3d 374 (2019). "Indeed, our Supreme Court has recognized that [t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) *Mercer* v. *Commissioner of Correction*, supra, 730.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 142 Conn. App. 744, 753, 68 A.3d 111 (2013). The decision of whether to call a witness "is a tactical decision for defense counsel, and to the extent that the decision might be considered sound trial strategy, it cannot be the basis of a finding of deficient performance." (Internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 197 Conn. App. 822, 855, 234 A.3d 78 (2020), aff'd, 341 Conn. 279, 267 A.3d 120 (2021).

As this court has consistently recognized, "there is no per se rule that requires a trial attorney to call an expert in a criminal case." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 222 Conn. App. 278, 294, 304 A.3d 862 (2023), cert. denied, 348 Conn. 940, A.3d (2024); *Doan* v. *Commissioner of Correction*, supra, 193 Conn. App. 276 (same);

see also *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 100–101, 52 A.3d 655 (2012) (noting that our Supreme Court "has never adopted a bright line rule that an expert witness for the defense is necessary in every sexual assault case"); *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 833, 87 A.3d 600 ("there is no per se rule that requires a trial attorney to seek out an expert witness" (internal quotation marks omitted)), cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Instead, "[o]ur appellate courts repeatedly have rejected a petitioner's claim that his trial counsel rendered deficient performance by failing to call an expert witness at trial on the ground that trial counsel's decision was supported by a legitimate strategic reason." *Brown* v. *Commissioner of Correction*, supra, 295; see also *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 521, 964 A.2d 1186 ("the decision whether to call a particular witness falls into the realm of trial strategy, which is typically left to the discretion of trial counsel . . . [however] it does not follow necessarily that, in every instance, trial counsel's strategy concerning these decisions is sound" (citation omitted)), cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

As this court observed in *Brown*, "[f]ailing to retain or utilize an expert witness is not deficient when part of a legitimate and reasonable defense strategy. . . . [T]he selection of an expert witness is a paradigmatic example of the type of strategic choic[e] that, when made after thorough investigation of [the] law and facts, is *virtually unchallengeable*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, supra, 222 Conn. App. 295. Even in cases in which "an expert may have been helpful to the defense, there is always the possibility that an expert called by one party, upon cross-examination, may actually be more helpful to the other party. . . . [T]he right to counsel is the right to effective assistance, and not the right to perfect representation." (Citation omitted.) *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 101.

Applying the foregoing principles, we agree with the habeas court's conclusion that trial counsel's decision not to consult with an expert on eyewitness identification to evaluate potential weaknesses in the state's eyewitness testimony, and to offer expert testimony at the hearing on the motion to suppress, was supported by a reasonable strategic basis. Trial counsel, an experienced senior assistant public defender, testified during the habeas trial that she was familiar with eyewitness identification experts and had considered the petitioner's request for an eyewitness identification expert, but opted not to pursue one because it would not have done "anything to enhance what was already there. The case dealt with . . . the identification . . . from the witness[es], [one of whom] indicated that he was pretty

sure that [the petitioner] was the person who shot him, as well as a witness . . . [who] said the same thing . . . . The videos that we saw, my own investigation, as well as the previous investigation from . . . Billings, where [they] indicated that they did an enhancement of the videos [and a] side-by-side comparison, and [there are] characteristics of the shooter and [the petitioner that] were quite similar, including the very prominent crease that [the petitioner] has in his forehead." After considering these factors, trial counsel opted not to call an eyewitness identification expert. Trial counsel also pursued other avenues of discrediting the state's case. In addition to the motion to suppress the identifications, she sought an alibi for the petitioner and had continued to investigate the petitioner's case and planned to cross-examine the witnesses about potential weaknesses or discrepancies in their identifications of the petitioner, including varying descriptions given to the police regarding the petitioner's hairstyle.

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 316, 34 A.3d 1046 (2012). The habeas judge found credible trial counsel's testimony that "there was nothing an eyewitness expert would contribute to the defense." This court is obligated under *Strickland* to indulge the presumption that trial counsel's tactical decision not to call an expert witness falls within the broad range of reasonable trial strategy. See, e.g., *Brown* v. *Commissioner of Correction*, supra, 222 Conn. App. 296–97 (trial counsel's decision not to call eyewitness identification expert "was supported by a legitimate strategic basis . . . [where trial counsel] was aware of the benefits that an eyewitness identification expert could provide . . . [but] nevertheless determined, on the basis of his investigation of the facts, that the testimony of an eyewitness identification expert . . . would not have been helpful at trial primarily because of the compelling nature of the victim's identification of the petitioner"). Given the facts in the present case, we conclude that trial counsel's strategy to undermine the impact of the eyewitness identifications through cross-examination and other means, rather than to call an expert on eyewitness identification, was reasonable.

The petitioner claims that, under the circumstances of this case, the holdings in *State* v. *Guilbert*, 306 Conn. 218, 49 A.3d 705 (2012), and *United States* v. *Nolan*, 956 F.3d 71 (2d Cir. 2020), necessitated the hiring of an eyewitness identification expert on the petitioner's behalf. We are not persuaded.

As this court recently noted, "*Guilbert* was not a habeas case but, instead, was a direct appeal in which our Supreme Court reversed its precedent to conclude

that testimony by a qualified expert on the fallibility of eyewitness identification is admissible when that testimony would aid the jury in evaluating the state's identification evidence." *Brown* v. *Commissioner of Correction*, supra, 222 Conn. App. 300. In reaching that holding in *Guilbert*, our Supreme Court enumerated eight factors relevant to the unreliability of eyewitness identifications, and thus, the admissibility of expert testimony concerning such identifications. Those factors are "that (1) there is at best a weak correlation between a witness' confidence in his or her identification and its accuracy, (2) the reliability of an identification can be diminished by a witness' focus on a weapon, (3) high stress at the time of observation may render a witness less able to retain an accurate perception and memory of the observed events, (4) cross-racial identifications are considerably less accurate than same race identifications, (5) a person's memory diminishes rapidly over a period of hours rather than days or weeks, (6) identifications are likely to be less reliable in the absence of a double-blind, sequential identification procedure, (7) witnesses are prone to develop unwarranted confidence in their identifications if they are privy to postevent or postidentification information about the event or the identification, and (8) the accuracy of an eyewitness identification may be undermined by unconscious transference, which occurs when a person seen in one context is confused with a person seen in another." (Footnotes omitted.) *State* v. *Guilbert*, supra, 306 Conn. 237–39.

In *Nolan*, the United States Court of Appeals for the Second Circuit addressed the issue of whether, in that case, the failure to call an eyewitness identification expert could constitute deficient performance for purposes of a claim of ineffective assistance of counsel. See *United States* v. *Nolan*, supra, 956 F.3d 76. In *Nolan*, the defendant's trial counsel "did virtually nothing to contest the admissibility of [eyewitness] identifications"; id.; that "bore significant indicia of unreliability" and were central to the prosecution's case. Id., 75. The court in *Nolan* noted the following important factors that were relevant to the eyewitness identifications, namely, the perpetrators were wearing disguises; the victims were Black and Hispanic, whereas the defendant was white; there was a weapon present; many weeks had elapsed between the instigating incident and the victims' identifications of the defendant in a photographic array; and, finally, "the police employed highly irregular procedures in pursuing the witnesses' identification[s] of [the defendant]." Id., 80, 81. In light of those factors, the court concluded that "counsel could not render effective assistance without input from an expert. Counsel therefore had a duty at least to consult an expert and consider whether to call her to the stand." Id., 82.

The petitioner argues that, because some of the factors concerning the unreliability of an eyewitness identi-

fication considered by the courts in *Guilbert* and *Nolan* exist in the present case, and because the petitioner's prior counsel had withdrawn specifically so that the petitioner might be able to have an expert on eyewitness testimony testify on his behalf, "even the most minimally competent attorney would at least consult an expert suggested to her by a credible source where the expert's testimony might raise reasonable doubt, at trial, regarding a defendant's guilt." We conclude, however, that the petitioner's reliance on *Guilbert* and *Nolan* is misguided.

First, *Guilbert* addresses only the issue of the admissibility of testimony from an eyewitness identification expert; it does not address whether the decision to call or not to call an expert constitutes deficient performance. Second, although the petitioner is correct that some of the factors from *Nolan* and *Guilbert* exist in the present case, including a cross-racial identification and the presence of a weapon, there are crucial differences that could lead a reasonable attorney to make a different choice regarding the decision to call an expert witness. Unlike in *Guilbert* or *Nolan,* in the present case there was a face-to-face confrontation of some length between the victim and the petitioner immediately prior to the shooting, but before a weapon was introduced into the confrontation. During that confrontation, the petitioner and the victim had an exchange of sufficient length that they moved from inside the convenience store to the area outside the store, and an onlooker had time to attempt to intervene. Additionally, the petitioner in the present case was not wearing a disguise during the confrontation,[5] as the perpetrators did in *Nolan,* and, unlike in *Nolan* or *Guilbert,* the confrontation in the present case was caught on surveillance video, which the state intended to offer at trial to corroborate the testimony of the eyewitnesses. Although a jury did not have a chance to review the surveillance video footage in this case, the state's position was that the video showed the events leading up to the shooting and depicted the shooter. Had the case proceeded to trial, as recognized by trial counsel, the jury would have had a chance to compare the surveillance video footage to the testimony of the eyewitnesses and draw its own conclusions. Furthermore, unlike in *Nolan,* the court in the present case already had found that there was nothing unnecessarily suggestive or irregular about the procedure used in administering the photographic array to the victim and other testifying eyewitnesses. We conclude that, as a result of the significant factual distinctions between the present case and *Guilbert* or *Nolan,* neither of those decisions required trial counsel to retain an eyewitness identification expert.

Finally, the petitioner argues that the fact that his previous counsel had withdrawn specifically so that the petitioner's defense would be able to afford an eyewit-

ness identification expert should have prompted trial counsel to do the same once she was appointed to the petitioner's case. That, however, is not the standard for deficient performance. Although the petitioner's previous counsel may have believed that an eyewitness identification expert was necessary, a competent attorney also reasonably could have reached the opposite conclusion. As discussed previously in this opinion, as a reviewing court, we must extend significant latitude in determining what constitutes legitimate trial strategy. The fact that one attorney may have opted for an expert does not signify as to whether the choice by an attorney not to consult an expert constitutes deficient performance.

Accordingly, we conclude that the habeas court properly determined that the petitioner failed to show that trial counsel's performance was deficient, as the petitioner failed to present sufficient evidence to overcome the presumption that trial counsel's choice not to consult with, or to present the testimony of, an expert witness was sound trial strategy. Therefore, the petitioner's claim of ineffective assistance of counsel fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, in the motion to suppress, filed October 24, 2017, and amended October 26, 2017, the petitioner argued that the identification procedures were unnecessarily suggestive such that they violated his due process rights. During the arguments on the motion, the petitioner argued, inter alia, that the procedures were unnecessarily suggestive because one of the detectives remarked to Rivera that they had a suspect before he looked at the photographs, and also told the victim before showing him the photographs "to try to pick out the person who shot him . . . ." The petitioner further argued that Rivera and the victim, in their identifications, were not "[100] percent positive that this was the person who actually did the shooting." In ruling on the motion, the court noted that "[t]he detectives did not inform [Rivera] or [the] victim that the [petitioner's] photo[graph] was included . . . . Informing [Rivera] or [the] victim that they would be looking [to] see if the suspect was there is not the same as telling them that the suspect was included. The detectives did not do anything to influence the identification of the [petitioner]. Although neither [Rivera] [n]or the victim [stated that either one had] 100 percent certainty, [the victim] wrote that he was 'quite sure' [in his identification], and . . . Rivera wrote, 'it looks like the guy. I'm pretty sure it is him.' " The court concluded that "the procedure used, viewed in light of the factual circumstances, is not unnecessarily suggestive," and denied the motion to suppress.

[2] At the suppression hearing, in addition to presenting the testimony of the victim and Rivera, the petitioner called four police officers to testify regarding the statements taken from the victim and Rivera, including their descriptions of the shooter, and concerning the administration of the photographic lineup and the identification procedures used in conducting that lineup.

[3] A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept entry of a guilty plea. See generally *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[4] The habeas court rested its decision on its conclusion that trial counsel's performance was not deficient and did not address the issue of prejudice. In light of our determination that the habeas court did not err in its finding that trial counsel's performance was not deficient, we need not address the prejudice prong. See *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 667, 289 A.3d 1206 (failure of petitioner to demonstrate either deficient performance or prejudice is fatal to habeas petition), cert. denied, 348 Conn. 917, 303 A.3d 1193 (2023).

[5] The petitioner likens the fact that he was wearing a hoodie at the time of the shooting to wearing a disguise. The petitioner fails to explain how the hoodie would constitute a "[disguise] . . . that partially obscured [his] features" as was the case in *Nolan*, in which the defendants wore a "half ski mask" and a "skully." (Internal quotation marks omitted.) *United States* v. *Nolan*, supra, 956 F.3d 80.

---