******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMES P. *v.* COMMISSIONER OF CORRECTION*
## (AC 46227)

Cradle, Seeley and Norcott, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes pursuant to a plea agreement reached in accordance with *State* v. *Garvin* (242 Conn. 296), sought a writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance. In accordance with the *Garvin* agreement, the trial court agreed to a specific sentence for the petitioner as long as the petitioner, inter alia, was not arrested for any offense for which a court made a finding of probable cause while awaiting sentencing. If there was a violation of the agreement, the petitioner would no longer be entitled to the agreed upon sentence and would face a longer period of incarceration. Before the petitioner was sentenced, he was arrested on subsequent charges. The sentencing court found a *Garvin* violation as a result and sentenced him accordingly. Before the habeas court, the petitioner alleged that his trial counsel performed deficiently by improperly advising him with respect to whether the sentencing court could deviate from the plea agreement, providing him with unrealistic expectations as to the sentence he would face, and that he was prejudiced by this advice because he would not have accepted the plea deal but for his counsel's deficient performance. After a trial, the habeas court rendered judgment denying the petition, and the petitioner, on the granting of certification, appealed to this court. *Held* that the habeas court properly denied the operative petition as to the petitioner's claim of ineffective assistance of his trial counsel: the petitioner failed to prove that he was prejudiced by any alleged deficient performance of his trial counsel in advising him of the remote possibility that the trial court could deviate from the plea agreement at the time of sentencing, as the trial court's swift response when this notion was raised by trial counsel made it clear that there was no real possibility of that outcome, and the petitioner's bald assertion in his appellate brief that there was a reasonable probability that, but for counsel's improper advice, he would have rejected the plea agreement and proceeded to trial, without more, was insufficient to establish that the petitioner was prejudiced by his trial counsel's performance; moreover, the plea canvass conducted

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

by the trial court established that the petitioner understood the sentencing possibilities and made the strategic decision to plead guilty to ensure that he would receive a shorter period of incarceration and to avoid the risk of being exposed to the maximum possible sentence for the charges if he went to trial; furthermore, the petitioner failed to present any credible evidence at the habeas trial that he would have gone to trial but for trial counsel's allegedly deficient performance in inducing him to plead guilty.

Argued January 16—officially released April 9, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (petitioner).

*Nathan J. Buchok*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Christopher A. Alexy*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SEELEY, J. Following the granting of his petition for certification to appeal, the petitioner, James P., appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus, in which he alleged a claim of ineffective assistance of his criminal trial counsel, Douglas Ovian. On appeal, the petitioner, who had been convicted of various crimes pursuant to a guilty plea, claims that (1) his trial counsel performed deficiently by informing him that it was possible for the sentencing court to reject the plea agreement if the court determined that the agreed upon sentence was too high and (2) he was prejudiced by his trial counsel's deficient performance. We disagree with

the petitioner's second claim and, accordingly, affirm the judgment of the habeas court.

The following facts, as set forth in the record and by the habeas court in its memorandum of decision, and procedural history are relevant to this appeal. In June, 2015, the petitioner was arrested for assaulting his elderly mother in the parking lot of a grocery store and charged with various crimes (2015 case).[1] On March 10, 2016, pursuant to a plea agreement reached in accordance with *State* v. *Garvin*, 242 Conn. 296, 300–302, 699 A.2d 921 (1997),[2] the petitioner appeared before the trial court and pleaded guilty in the 2015 case to charges of assault of an elderly person in the third degree and criminal violation of a protective order, and to a part B information charging him with being a persistent offender to crimes involving assault pursuant to General Statutes § 53a-40d. In accordance with the *Garvin* agreement, the court agreed to sentence the petitioner to a total effective sentence of seven years to serve, execution suspended after three years, of which one

[1] The state initially charged the petitioner with breach of the peace in the second degree in violation of General Statutes § 53a-181, assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a), and criminal violation of a protective order in violation of General Statutes § 53a-223.

[2] "A *Garvin* agreement is a conditional plea agreement. . . . Typically, a defendant who enters into a *Garvin* agreement agrees to a particular sentence of incarceration, but wishes to be at liberty pending sentencing. Thus, the court will release the defendant on bond prior to sentencing and, in exchange, the defendant agrees to abide by certain conditions. Oftentimes, those conditions include a requirement that the defendant appear at the sentencing hearing and refrain from being arrested. If the defendant violates a condition of the *Garvin* agreement, the court may impose a longer sentence than that to which the defendant originally agreed." (Citation omitted.) *State* v. *Hudson*, 182 Conn. App. 833, 835 n.4, 191 A.3d 1032 (2013). "A *Garvin* agreement . . . has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Hurdle*, 217 Conn. App. 453, 456 n.3, 288 A.3d 675, cert. granted, 346 Conn. 923, 295 A.3d 420 (2023).

year was mandatory, followed by five years of probation, with the right to argue down to a sentence of seven years to serve, execution suspended after the one year mandatory minimum, followed by five years of probation, so long as he (1) appeared in court and was sober for sentencing and (2) was not arrested while out on bond for any offense for which a court made a finding of probable cause between the dates of his guilty plea and his sentencing. The court advised the petitioner that if he violated any condition of the *Garvin* agreement, he would no longer be entitled to the agreed upon sentence and that, instead, he would "face . . . fifteen years and six months because the state's not going to nolle the breach of peace [charge]." The petitioner stated that he understood the terms of the *Garvin* plea agreement.

During the court's thorough plea canvass, the following colloquy transpired:

"The Court: All right. Any reason for the pleas not to be accepted?

"[The Prosecutor]: No, Your Honor.

"[Trial Counsel]: None, Your Honor. Except, I would just indicate that, although it's maybe not common for it to happen, just as it's possible for a court to decide not to abide by the agreement and allow a [withdrawal] of the plea because the court's going to exceed the agreement, it's also possible that the court can choose to allow the state to withdraw from the agreement because of a decision to undercut the agreement. So, I just wanted to make sure that the court was willing to include that concept in the canvass, as well.

"The Court: The idea that, if the state reads the presentence investigation [report], [it] might reach out to the defense and, say, let's modify the agreement, based on what [it] read.

"[Trial Counsel]: Or, that the court might encourage that in the same way that it could choose after reading and hearing everything to exceed it. So—

"The Court: It's possible. I've never done it. Frankly, I don't think it's quite fair to everybody . . . without notice to start changing offers.

"[Trial Counsel]: I understand, Your Honor. I . . . will just say that typically when I describe . . . the plea agreement involving a [presentence investigation report], I made that reference that it's not without— beyond the realm of possibility for it to go the other way, since I've seen it. But I'm glad the court has said it hasn't seen it in its own work.

"The Court: I have not—I have not done it. And I'm trying to search my memory for an incidence where it happened without the parties coming to the judge and suggesting it.

"[Trial Counsel]: I see . . .

"The Court: My point is, don't count on it. You shouldn't—you shouldn't hang your hopes on that would be happening. And I see [the prosecutor] shaking her head in the negative at the possibility. Is that correct, counsel?

"[The Prosecutor]: That's correct.

"The Court: Anything can happen, but you shouldn't entertain any thoughts other than the one year floor is going to happen.

"[The Petitioner]: Doug Flutie Hail Mary might be out of the question,[3] I guess, then.

---

[3] The habeas court provided context for the petitioner's statement at the plea canvass in its memorandum of decision: "Any true college football fan from the 1980s remembers the November 23, 1984, Boston College v. [University of] Miami game. With six seconds remaining on the clock, Boston College quarterback Doug Flutie took the final snap of the game against the defending national champions, dropped back, scrambled away from pressure to his right, and heaved a 'Hail Mary' from his own thirty-seven yard line that was caught by teammate Gerard Phelan as he fell across the

"The Court: Exactly right, sir." (Footnote added.)

The court found that the plea was made "voluntarily [and] understandingly . . . with the assistance of competent counsel," and accepted the plea. The matter was continued to May 13, 2016, for sentencing.

Thereafter, on April 4, 2016, before sentencing for the 2015 case, the petitioner was arrested after he accosted his elderly mother in a parking lot of a store (2016 case).[4] On May 27, 2016, the petitioner appeared before the court, *Oliver, J.,* for sentencing with respect to the 2015 case. The court heard argument from the prosecutor and the petitioner's criminal trial counsel. The court found a *Garvin* violation as a result of the petitioner's arrest in the 2016 case and sentenced him to a total effective sentence of ten years of incarceration, execution suspended after seven years, followed by five years of probation. The petitioner did not appeal from the judgment of conviction in the 2015 case.

On May 25, 2018, the petitioner, in a self-represented capacity, filed a petition for a writ of habeas corpus, alleging ineffective assistance by his trial counsel. On August 4, 2022, with the assistance of habeas counsel,

goal line. The catch resulted in a 47-45 Boston College victory . . . ." See also P. Attner, "Flutie's Miracle Pass Still Amazing to Phelan After All These Years," Los Angeles Times, December 31, 1995, available at https://www.latimes.com/archives/la-xpm-1995-12-31-sp-19732-story.html (last visited April 1, 2024); see also *Commonwealth* v. *Camuti,* 493 Mass. 500, 510 n.8, 226 N.E.3d 868 (2024) ("a 'Hail Mary' " is long forward pass in football made in desperation into end zone with little time remaining in game and small chance of success, and Flutie's pass in game between Boston College and University of Miami in 1984 arguably represents most famous example).

[4] In connection with the 2016 case, the petitioner entered a guilty plea on March 9, 2018, to a charge of violation of a protective order pursuant to the *Alford* doctrine, under which "[a] defendant who pleads guilty . . . does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept entry of a guilty plea. See generally *North Carolina* v. *Alford,* 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)." *Love* v. *Commissioner of Correction,* 223 Conn. App. 658, 663 n.3, 308 A.3d 1040 (2024).

the petitioner filed the operative second amended petition for a writ of habeas corpus, which alleged two counts of ineffective assistance of trial counsel, one count of prosecutorial impropriety, and one count of a due process violation.[5]

The ineffective assistance of counsel claim in count one pertained to trial counsel's representation of the petitioner in the 2015 case. Specifically, in count one, the petitioner alleged, inter alia,[6] that his trial counsel

[5] The habeas court denied the habeas petition as to the petitioner's claims of prosecutorial impropriety and a due process violation in counts three and four, and the petitioner does not challenge the court's ruling concerning those counts. Moreover, the petitioner's claim on appeal does not relate to the ineffective assistance of counsel claim in count two, which pertains to trial counsel's representation of the petitioner concerning the 2016 case. Therefore, the only claim of ineffective assistance of counsel that is at issue in this appeal relates to trial counsel's representation in the 2015 case, as alleged in count one.

[6] The petitioner also alleged in count one that his trial counsel was ineffective by failing to adequately explain to the petitioner the offenses with which he was charged; allowing the petitioner to enter his plea despite the fact that the petitioner was noticeably under the influence of alcohol at the time, which thereby impaired his judgment regarding his decision to plead guilty; failing to object to the prosecutor's threat to raise the maximum exposure she would seek to fifteen and one-half years if the petitioner did not enter a guilty plea that day; incorrectly assuring the petitioner that he would receive 120 days of jail credit for time he served while he was incarcerated on another charge in 2015; urging and pressuring the petitioner to plead guilty; and inadequately arguing, at the May 27, 2016 sentencing hearing, to put off sentencing for the 2015 case until an agreement could be reached to dispose of both the 2015 and 2016 cases together. The petitioner does not challenge the habeas court's decision as to count one with respect to these other grounds; therefore, we deem any claim related thereto abandoned. See *New Milford* v. *Standard Demolition Services, Inc.*, 212 Conn. App. 30, 34 n.1, 274 A.3d 911 (declining to review claim that was not briefed and, therefore, was deemed abandoned), cert. denied, 345 Conn. 908, 283 A.3d 506 (2022). We do note, however, that, as to the petitioner's claim that he was under the influence of alcohol at the time of the plea canvass, the habeas court concluded that nothing in the transcript revealed that the petitioner was unable to provide appropriate and responsive answers to every one of the court's questions, and there was no "evidence in the trial court record that would lead any reasonable person to believe that the petitioner was not in full control of his mental faculties or that he did not 'knowingly, intelligently, and voluntarily' enter his guilty [plea] . . . ." The

performed deficiently by "providing improper advice with respect to whether the trial court could deviate from the plea agreement and sentence the petitioner to less time than agreed upon." The petitioner argued further that, in doing so, trial counsel provided him with unrealistic expectations as to the sentence he would face, and that he was prejudiced thereby.

A trial was held before the habeas court, *Newson, J.*, on November 17, 2022, during which the petitioner was represented by counsel. The petitioner's trial counsel and the petitioner each testified at the habeas trial. In a memorandum of decision dated December 8, 2022, the habeas court rendered judgment denying the operative habeas petition. With respect to the claim of ineffective assistance of trial counsel in count one, the court concluded that the petitioner had failed to meet his burden of demonstrating that his trial counsel performed deficiently and that he was prejudiced by counsel's allegedly deficient performance. Thereafter, the court granted the petition for certification to appeal, and this appeal followed.

On appeal, the petitioner asserts that the habeas court improperly rejected his claim that his trial counsel performed deficiently by inducing him to enter his guilty plea in the 2015 case with unrealistic expectations about the outcome of the sentencing. Specifically, the petitioner argues that trial counsel made "false representations about his ability to argue for a sentence below the agreed upon parameters" and that he might also have an opportunity to argue for lesser charges. With respect to the issue of prejudice, the petitioner argues that the habeas court erroneously determined that he

court also found credible trial counsel's testimony that "he had no memory of the petitioner smelling of alcohol or appearing to be under the influence on the day of the plea" hearing or that, as the petitioner alleged, the prosecutor approached the petitioner and his trial counsel in the lobby and made a comment about the petitioner smelling like alcohol.

failed to sustain his burden of proving that he would not have accepted the plea deal but for the constitutionally deficient performance of his trial counsel. We are not persuaded.

We first set forth our standard of review and general principles governing claims of ineffective assistance of counsel resulting from guilty pleas. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary . . . ." (Internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 221 Conn. App. 852, 863, 303 A.3d 1196 (2023), cert. denied, 348 Conn. 939, 307 A.3d 273 (2024); see also *Love* v. *Commissioner of Correction*, 223 Conn. App. 658, 667, 308 A.3d 1040 (2024). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and prejudice prong. . . . It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 342 Conn. 771, 780, 272 A.3d 189 (2022). "[B]ecause a successful petitioner must satisfy both prongs of the *Strickland* test, failure to satisfy either prong is fatal to the habeas petition." (Internal quotation marks omitted.) *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 667, 289 A.3d 1206, cert. denied, 348 Conn. 917, 303 A.3d 1193 (2023).

In the present case, the habeas court denied the petitioner's habeas petition on the grounds that the petitioner failed to demonstrate both deficient performance

and prejudice with respect to his claim of ineffective assistance of counsel in count one. We need not decide whether the petitioner's trial counsel rendered deficient performance because, even if we assume that counsel's performance was deficient, we conclude, for the following reasons, that the petitioner has failed to demonstrate that he was prejudiced by his trial counsel's allegedly deficient performance. See, e.g., *Martinez* v. *Commissioner of Correction*, supra, 221 Conn. App. 864.

"To establish prejudice in cases involving guilty pleas, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Love* v. *Commissioner of Correction*, supra, 223 Conn. App. 667; see also *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Moreover, a petitioner "must make more than a bare allegation that he would have pleaded differently and gone to trial . . . ." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 473, 72 A.3d 426 (2013), appeal dismissed, 317 Conn. 594, 119 A.3d 1153 (2015). "Additionally, a petitioner's assertion after he has accepted a plea that he would have insisted on going to trial suffers from obvious credibility problems . . . and should be assessed in light of the likely risks that pursuing that course would have entailed." (Citations omitted; internal quotation marks omitted.) Id., 475–76; see also *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 51–52, 250 A.3d 44, cert. denied, 336 Conn. 948, 250 A.3d 695 (2021).

In the present case, the habeas court, in addressing the petitioner's claim that his trial counsel performed deficiently "by inducing him to enter his [guilty plea] with unrealistic expectations about the possible outcomes of the sentencing," stated: "Under the particular

circumstances of this case, where the petitioner was facing one charge that required the imposition of a minimum of one year in prison, there was no legal sentence that could be imposed by Judge Oliver that would have been less than the minimum sentence called for under the terms of the plea agreement. Therefore, even if Judge Oliver were to have taken this rarest of action [of deviating from the terms of a plea agreement], he had no power to reduce the petitioner's minimum prison exposure below what was called for under the plea agreement without the consent of the prosecutor. . . . In the end, raising this miniscule possibility with the petitioner, if it had not been checked by the court, would likely have warranted a finding that [trial counsel's] conduct was unreasonable. . . .

"Luckily . . . [trial counsel's] information did not go unchecked. [Trial counsel] raised the issue in court and Judge Oliver informed the petitioner in no uncertain terms, which the petitioner acknowledged, that such an outcome was not a real possibility. The petitioner also heard Judge Oliver confirm with the [prosecutor] that she would not agree to modify any charges. Because [trial counsel's] reference to the possibility of the court deviating from the plea agreement at the time of sentencing in the petitioner's favor was immediately addressed and corrected in court, this court does not find that the petitioner has established that [trial counsel's] conduct was constitutionally unreasonable. . . . Further, given the fact that the petitioner acknowledged his understanding when Judge Oliver and the [prosecutor] immediately notified him that there was no real possibility of such an outcome, the petitioner has failed to prove that he was prejudiced, because there is no reasonable basis to believe that he was under any false pretenses about the charges or the real possible outcome he could expect at [the] time of sentencing." (Citations omitted; footnote omitted.)

After our careful review of the record, we agree with the habeas court that the petitioner was not prejudiced by any alleged deficient performance of his trial counsel in advising the petitioner of the remote possibility that the court could deviate from the plea agreement at the time of sentencing in the petitioner's favor. We first note that the trial court's swift response when this notion was raised by the petitioner's trial counsel, which made it clear that there was no real possibility of that outcome, renders the petitioner's claim that counsel's advice caused him to have unrealistic expectations about the outcome of sentencing and thereby prejudiced him dubious.[7] Nevertheless, we must determine whether the petitioner has demonstrated "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Love* v. *Commissioner of Correction*, supra 223 Conn. App. 667. For the following reasons, we conclude that he has not done so.

Although the petitioner devotes a portion of his appellate brief to his argument that he was prejudiced by his trial counsel's deficient performance, most of the arguments raised therein relate to the adequacy of counsel's performance and advice to the petitioner about accepting the plea offer, not to whether the petitioner would have proceeded to trial but for counsel's deficient

---

[7] As the habeas court found, any misunderstanding about the possible outcomes at sentencing caused by trial counsel's conversation with the petitioner was quickly resolved, as the trial court made it clear "[i]n no uncertain terms" that there was no chance of varying from the plea agreement at sentencing. This was also confirmed by the prosecutor and acknowledged by the petitioner. Additionally, at the plea hearing when the court specifically stated to the petitioner that the one year minimum portion of the sentence was "mandatory based on the conviction of assault [in the] third degree of an elderly victim," the petitioner replied, "I do understand that." Therefore, the sentencing court had no power to reduce the petitioner's minimum sentence exposure below what was called for in the plea agreement.

performance. For example, the petitioner asserts that "[t]he habeas court failed to account for the impact of the petitioner learning that his assumptions regarding the plea agreement were inaccurate and the pressure this placed upon him to make a decision regarding the plea agreement without full faith in his counsel and, thus, without making a voluntary decision to accept the plea." See *Hill* v. *Lockhart*, supra, 474 U.S. 56–57 (when "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases,'" which relates to performance prong of *Strickland* test). He also asserts that "the improper advice of trial counsel with regard to the possibility that the trial court would deviate from the sentencing guidelines and offer a sentence lower than the floor established by the agreement prejudiced the petitioner by forcing him to make a decision to accept a plea agreement without proper advice or preparation . . . ." This argument, however, focuses on the "improper advice" given to the petitioner by his trial counsel and the impact it had on his decision to plead guilty, and does not in any way establish that the petitioner would have gone to trial if counsel had not given him "unrealistic" expectations about his sentencing possibilities with the plea agreement.

In one sentence in his principal appellate brief, the petitioner asserts that "there remains a reasonable probability that but for the improper advice of counsel he would have decided to reject the plea agreement and proceed to trial." This bald assertion, without more, is not sufficient to establish that the petitioner was prejudiced by his trial counsel's performance.[8] As we

---

[8] We also note that the petitioner did not allege in his operative habeas petition that, had counsel correctly informed him about his sentencing possibilities, he would have pleaded not guilty and insisted on going to trial. Instead, in count one, the petitioner alleges that "there is reasonable probability that, but for counsel's acts and omissions, the petitioner would have

have stated previously, "[w]ith respect to the prejudice prong, a petitioner 'must make more than a bare allegation that he would have pleaded differently and gone to trial . . . .' " *Shaheer* v. *Commissioner of Correction*, 207 Conn. App. 449, 469, 262 A.3d 152, cert. denied, 340 Conn. 903, 263 A.3d 388 (2021). "[C]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences. *Lee* v. *United States*, [582] U.S. [357], 137 S. Ct. 1958 . . . 198 L. Ed. 2d 476 (2017)." (Internal quotation marks omitted.) *Kondjoua* v. *Commissioner of Correction*, 194 Conn. App. 793, 801, 222 A.3d 974 (2019), cert. denied, 334 Conn. 915, 221 A.3d 908 (2020).

Our review of the relevant transcript from the petitioner's plea canvass establishes that the petitioner understood the sentencing possibilities and wanted to plead guilty. On two separate occasions during the plea canvass, the trial court expressly advised the petitioner that the charges to which he was pleading guilty carried a mandatory minimum sentence of one year of incarceration. See, e.g., *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 421–22, 991 A.2d 705 (because trial court fully informed petitioner of terms of plea agreement and petitioner acknowledged that he understood those terms, petitioner was unable to demonstrate prejudice despite counsel's inaccurate advice), cert. denied, 297 Conn. 915, 996 A.2d 279 (2010); see also *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 285, 149 A.3d 185 (2016) ("[a] court is permitted to rely upon a defendant's answer given in response to a plea canvass"), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017). The petitioner's statements during the

received a more favorable outcome than he did receive with [trial counsel] as his attorney."

plea canvass demonstrate that he understood there was "no real possibility" that he would receive a sentence below the one agreed upon in the plea agreement. Moreover, when the court asked the petitioner whether "anyone forced, threatened, or promised [him] anything to make" him enter his guilty plea, he responded: "Well, I really don't want fifteen years. So, I'd rather just cut my losses . . . ." The court followed with the question of whether the petitioner "essentially [was making] a strategic decision based on the nature of the exposure and what [he] thought the state [could] prove," to which the petitioner answered: "Yeah, I don't want to be fifty-two years old and getting out of jail if I roll the dice on those [charges]." These statements demonstrate that the petitioner made the strategic decision to plead guilty to ensure that he would receive a shorter period of incarceration and that he did not want to risk being exposed to the maximum possible sentence for the charges if he went to trial.

Additionally, there is nothing in the petitioner's testimony at the habeas trial suggesting that the petitioner would have gone to trial but for trial counsel's allegedly deficient performance in inducing him to enter his guilty plea with unrealistic expectations about the possible outcomes of the sentencing. Trial counsel testified at the habeas trial that, after the petitioner entered his guilty plea in the 2015 case, the petitioner informed trial counsel that he wanted to withdraw the plea. Trial counsel then advised the petitioner that, if he withdrew his plea, he would be facing "the same negative implications that caused him to decide to [plead guilty] to begin with." Ultimately, the petitioner did not seek to withdraw his plea, which lends further support to the petitioner's statement that he did not want to "roll the dice" with a trial on the charges and the maximum possible sentence he would be subjected to if he did not plead guilty. We agree with the habeas court that

the petitioner "failed to present any credible evidence that . . . he would not have gone forward with the plea agreement and was prepared to proceed to trial" but for trial counsel's allegedly deficient advice and performance.

Accordingly, the petitioner failed to prove that he was prejudiced by his trial counsel's allegedly deficient performance. We conclude, therefore, that the habeas court properly denied the habeas petition as to the petitioner's claim of ineffective assistance of counsel in count one.

The judgment is affirmed.

In this opinion the other judges concurred.